ROBBINS GELLER RUDMAN
    & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
swilliams@rgrdlaw.com

ROBBINS GELLER RUDMAN
    & DOWD LLP
DANIELLE S. MYERS (259916)
MICHAEL ALBERT (301120)
KENNETH P. DOLITSKY (345400)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
kdolitsky@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HYUNGJOON KIM, Individually and on Behalf of All Others Similarly Situated, <br><br>　　　　　　　　　　Plaintiff, <br><br>　　vs. <br><br>SYNOPSYS, INC. et al., <br><br>　　　　　　　　　　Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 5:25-cv-09410-EKL

OHIO CARPENTERS PENSION FUND, UA LOCAL 13 PENSION FUND, AND SHEET METAL WORKERS' LOCAL NO. 80 PENSION TRUST FUND'S REPLY BRIEF IN FURTHER SUPPORT OF LEAD PLAINTIFF MOTION

DATE:　　　April 29, 2026
TIME:　　　10 a.m.
CTRM:　　　7, 4th Floor
JUDGE:　　Hon. Eumi K. Lee

4897-3132-2505.v1

## I.    INTRODUCTION

Ohio Carpenters Pension Fund, UA Local 13 Pension Fund, and Sheet Metal Workers' Local No. 80 Pension Trust Fund (the "Pension Funds") satisfy the PSLRA's requirements for lead plaintiff appointment.  As sophisticated institutional investors, the Pension Funds suffered massive aggregate losses across both sets of claims alleged in this action, providing them with the single greatest incentive to maximize recovery for all class members.

| **Remaining Movant** | **1934 Act (Section 10(b)) Loss** | **1933 Act (Section 11) Loss** | **Combined (1933 Act + 1934 Act) Loss** |
|---|---|---|---|
| The Pension Funds | $561,984 | $542,064 | $1,104,048 |
| Mehdi Vazeen | $980,297 | $0 | $980,297 |
| City of Sterling Heights Police & Fire Retirement System | ??????? (did not disclose) | $98,395 | ????? |

Meanwhile, City of Sterling Heights Police & Fire Retirement System ("Sterling Heights") offers positions that are as self-contradictory as they are legally meritless.  Sterling Heights asks this Court to take the extraordinary step of ordering a republication of notice, yet its own filing serves as a living refutation of any claim that notice was ineffective.  Furthermore, Sterling Heights' attempt to manufacture a "conflict" to justify its appointment as the leader of a merger subclass fails both the math and the law.  If a subclass is to be created, the Pension Funds – whose merger-related losses are more than five times larger than those of Sterling Heights – are the only logical choice to lead it.

## II.    ARGUMENT

### A.    The Pension Funds Are the Most Adequate Plaintiff Under the PSLRA

The Pension Funds are the presumptive lead plaintiff under the PSLRA because they possess the largest financial interest in the litigation and satisfy the requirements of Rule 23.  Under the PSLRA, the court must apply a rebuttable presumption that the most adequate plaintiff is the "person or group of persons" who "has the largest financial interest in the relief sought by the class" and

"otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).[1] As demonstrated below, the Pension Funds' unique position as major stakeholders in both the merger-related 1933 Act claims and open market 1934 Act claims makes them the most suitable choice to lead this action.

The depth of the Pension Funds' financial stake is unparalleled among the current movants. Specifically, the Pension Funds suffered significant and roughly equal six-figure losses under both the 1933 Act ($542,064) and the 1934 Act ($561,984). When these losses are considered in the aggregate – a total financial interest exceeding $1.1 million – the Pension Funds' stake surpasses that of any other lead plaintiff movant. While some courts, such as in *Hoang v. ContextLogic, Inc.*, 2022 WL 1539533 (N.D. Cal. May 16, 2022), credibly note that total losses may not always be a simple mathematical addition due to potential overlap between the Acts, the scale of the Pension Funds' exposure illustrates they are the most motivated party to pursue all available remedies. *See id.* at *7. Perhaps for that reason, one court held that when an action involves violations of both the 1934 Act and the 1933 Act, "the combined loss for the Exchange Act and the Securities Act is the appropriate loss to determine which lead plaintiff has suffered the greatest total losses." *Duane & Virginia Lanier Tr. v. Sandridge Energy, Inc.*, 2016 WL 1056653, at *2 n.4 (W.D. Okla. Mar. 16, 2016). Ultimately, whether viewed individually or in the aggregate, the Pension Funds' massive financial interest provides a powerful incentive to maximize recovery for the entire class. *See Comeau v. VinFast Auto Ltd.*, 2024 WL 4654216, at *1 (E.D.N.Y. Nov. 1, 2024) (appointing lead plaintiff with losses under both 1933 Act and 1934 Act in case with merger-related 1933 Act claims and open market purchase 1934 Act claims); *Olsen v. New York Cmty. Bancorp, Inc.*, 233 F.R.D. 101, 104-05, 108 (E.D.N.Y. 2005) (same) (finding that "[b]ecause the NYCB Group consists of both a movant who acquired his shares of NYCB stock through NYCB's merger with Roslyn *and* a movant who acquired its shares through the open market, all available legal theories are represented") (emphasis in original).

---

[1] The PSLRA amended the 1933 Act and the 1934 Act in virtually identical ways as to the lead plaintiff provisions. *Compare* 15 U.S.C. §78u-4(a)(3)(B) *with* 15 U.S.C. §77z-1(a)(3)(B). For simplicity, only the 1934 Act is cited herein.

LOCAL 13 PENSION FUND, AND SHEET METAL WORKERS' LOCAL NO. 80 PENSION TRUST FUND'S REPLY BRIEF IN FURTHER SUPPORT OF LEAD PLAINTIFF MOTION - 5:25-cv-09410-EKL

- 2 -

4897-3132-2505.v1

### B. Sterling Heights' Request for Republication of Notice Is Self-Contradictory

Sterling Heights argues that the PSLRA-required notice in this case was so deficient that the Court must order republication. This argument is a procedural non-starter. The purpose of the PSLRA notice is to inform potential lead plaintiffs of the litigation so they can move for appointment. Moreover, the PSLRA provides only for notice of the ***initial complaint***, even if additional complaints are filed before the lead plaintiff is appointed. 15 U.S.C. §78u-4(a)(3)(A). "Given that the PSLRA is intended to provide a comprehensive statutory scheme" and is "focused on the expeditious selection of lead plaintiff," "[t]he language of the statute cautions against imposing additional notices in all but unusual situations." *Ito-Stone v. DBV Techs. S.A.*, 2020 WL 6580776, at *3 (D.N.J. Nov. 10, 2020).

The class here received notice not once, but twice. Both the initial *Kim* complaint and the subsequent *New England Teamsters* complaint – the very filing that first asserted the merger share claims – issued notice to the class despite the norm that "republication is not required where a complaint [adds] . . . a closely related new claim." *Thomas v. Magnachip Semiconductor Corp.*, 2015 WL 3749784, at *4 (N.D. Cal. June 15, 2015); *New England Teamsters*, ECF 12. The *New England Teamsters* notice informed class members about the 1933 Act claims that were being added, the differences between the *Kim* complaint and the *New England Teamsters* complaint, and confirmed that the subject matter of the two securities fraud cases was largely identical. *New England Teamsters*, ECF 12. The *New England Teamsters* notice likewise made clear that:

> If you purchased or otherwise acquired Synopsys securities during the Class Period or purchased or otherwise acquired Synopsys common stock in exchange for shares of Ansys common stock in connection with the Acquisition, and were damaged thereby, you are a member of the "Class" and may be able to seek appointment as Lead Plaintiff. Lead Plaintiff motion papers must be filed no later than ***December 30, 2025***.

*Id*. (emphasis in original). Given these facts, no potential class members, including those with claims only under the 1933 Act, would have possibly disregarded the earlier notice. Ironically, the only complaint filed in these related actions that did ***not*** publish notice is the one filed by Sterling Heights itself. For a party to benefit from the existing notices to make a timely appearance, while

LOCAL 13 PENSION FUND, AND SHEET METAL WORKERS' LOCAL NO. 80 PENSION TRUST FUND'S REPLY BRIEF IN FURTHER SUPPORT OF LEAD PLAINTIFF MOTION - 5:25-cv-09410-EKL

- 3 -

4897-3132-2505.v1

simultaneously criticizing their reach – all while failing to contribute a notice of its own – is a bold exercise in procedural irony unsupported by any case law.

Ordering republication now would only serve to delay the case and waste judicial resources, providing zero benefit to a class that has already seen multiple sophisticated institutional groups step forward.

**C.    If a Subclass Is Created, the Pension Funds Must Lead It Given Their 5x Larger Loss**

Sterling Heights maintains – without a single supporting case – that any open-market purchaser is automatically precluded from leading a merger-share subclass because of an inherent "conflict" between merger participants and open-market purchasers.  This novel "purity" requirement is a transparent attempt to carve out a leadership role for Sterling Heights despite its vastly inferior financial stake.

The history of the Certifications filed in this case reveals that Sterling Heights' push for a subclass is a tactical pivot born of strategic necessity.  The Certification filed with the initial *Kim* complaint (filed October 31, 2025) showed losses of $5,543. ECF 1 at 25.  However, the subsequent Certification filed with the *New England Teamsters* complaint on November 25, 2025 revealed significantly larger stakes: $102,576 in 1934 Act losses and $72,893 in 1933 Act losses.  *New England Teamsters*, ECF 1 at 26.  Sterling Heights, which has strategically refused to provide its own fulsome trading data or disclose its 1934 Act losses, evidently recognized it could not compete with the New England Teamsters' six-figure losses.  Consequently, Sterling Heights appears to have devised this scheme to segment the class specifically to find a way to claim its $98,395 in 1933 Act losses should be considered in isolation.  This tactical fragmentation is a transparent attempt to bypass the PSLRA's "largest financial interest" mandate.

If the Court determines that a separate representative is appropriate for a 1933 Act subclass, the Pension Funds are the objectively superior choice.  The disparity in financial interest is undeniable:

LOCAL 13 PENSION FUND, AND SHEET METAL WORKERS' LOCAL NO. 80 PENSION TRUST FUND'S REPLY BRIEF IN FURTHER SUPPORT OF LEAD PLAINTIFF MOTION - 5:25-cv-09410-EKL    - 4 -

4897-3132-2505.v1

| Movant | Synopsys Shares Purchased in Open Market | Synopsys Shares Received in Merger | 1933 Act (Section 11) Loss on Merger Shares |
|---|---|---|---|
| **The Pension Funds (Total)** | **2,367** | **2,960** | **$542,064** |
| *Ohio Carpenters* | *9* | *1,492* | *$273,200* |
| *UA Local 13* | *1,560* | *0* | *$0* |
| *Sheet Metal 80* | *798* | *1,468* | *$268,864* |
| Sterling Heights | 0 | 525 | $98,395 |
| Mehdi Vazeen | 6,003 | 0 | $0 |

The Pension Funds received over five times more Synopsys shares in the merger than Sterling Heights and suffered more than five times the losses. Sterling Heights' argument that the Pension Funds are "conflicted" because they also purchased on the open market is a direct contradiction of Ninth Circuit precedent. In *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), the Ninth Circuit observed that "courts have generally declined to consider conflicts, particularly as they regard damages, sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." *Id.* at 909; *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) ("Waldman claims that since Weichman acquired its interest in Olsten as a result of the merger with Quantum, Weichman – as a former Quantum shareholder – may have benefited from the inflated price of the Quantum stock at the time of the merger in June 1996. Weichman correctly notes, however, that this argument generally relates to the measure of damages and is otherwise insufficient to defeat consolidation. . . . The court finds that this alleged conflict is speculative and hypothetical, and should not prevent the appointment of the Waldman Plaintiffs Group as lead plaintiff."); *In re Am. Int'l Grp., Inc. Sec. Litig.,* 265 F.R.D. 157, 171-72 (S.D.N.Y. 2010), *vacated on other grounds by* 690 F. 3d 229 (2d Cir. 2012) (same); *In re Cendant Corp. Litig.*, 182 F.R.D. 144, 148 (D.N.J. 1998) ("Competing movants may be correct that the resolution of this case could ultimately favor holders of one type of security over the others. On the other hand, representation by a disparate group of plaintiffs, each seeking only the protection of its own interests, could well hamper the force and focus of the litigation. A balance must be struck.

The Reform Act demands only that the interests of the class members be *adequately* represented by the lead plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(i). Thus, notwithstanding every plaintiff's undeniable interest in an outcome most favorable to his or her position, every warrior in this battle cannot be a general.") (emphasis in original).

The absurdity of Sterling Heights' "purity" test is best illustrated by its own logic: under this theory, Pension Fund member Ohio Carpenters' purchase of a mere *nine* Synopsys shares on the open market somehow "taints" its ability to represent a subclass of merger share purchasers (which subclass would represent more than 99% of its losses). Such a position is not only baseless but would effectively bar almost every major institutional investor – who regularly manages diverse and complex portfolios – from ever leading a securities litigation asserting multiple claims.

Sterling Heights offers no authority – because none exists – for the proposition that a plaintiff with a massive stake in a merger recovery is somehow "conflicted" from pursuing that recovery simply because they also purchased open-market shares. Neither of the two cases cited in Sterling Height's opposition support its position; in fact, both support the appointment of the Pension Funds to lead the 1933 Act claims alleged in this case. In *In re Peregrine Sys., Inc. Sec. Litig.*, 2002 WL 32769239, at *11-*12 (S.D. Cal. Oct. 11, 2002), the court appointed as lead plaintiff for 1934 Act claims the State Universities Retirement System of Illinois – a sophisticated institution with a massive seven figure loss – which acquired its class period shares in both a merger *and* on the open market. *In re HealthSouth Corp. Sec. Litig.*, 213 F.R.D. 447, 460, 462-63 (N.D. Ala. 2003) is a class certification opinion finding that open market purchases (who did not acquire any shares through the relevant merger) did not have standing to represent "*that component*" of the case) (emphasis added).

At its core, this case concerns Synopsys' misrepresentations and omissions made to the public at large. Whether a class member acquired Synopsys shares via the merger or the open market, the central liability question remains the same: did defendants violate the securities laws?

Sterling Heights' attempt to fragment the lead plaintiff appointment based on these ancillary interests is a transparent attempt to bypass the statutory "largest financial interest" requirement. The

LOCAL 13 PENSION FUND, AND SHEET METAL WORKERS' LOCAL NO. 80 PENSION TRUST FUND'S REPLY BRIEF IN FURTHER SUPPORT OF LEAD PLAINTIFF MOTION - 5:25-cv-09410-EKL                                                                                              - 6 -
4897-3132-2505.v1

Pension Funds, who hold the single largest 1933 Act loss and massive stakes in both sets of claims, are the most adequate plaintiffs to lead the class.

## III.    CONCLUSION

The Pension Funds are the only institutional movant with a massive, balanced stake across the entire litigation as well as the undisputed single largest 1933 Act loss.  Sterling Heights' motion is a collection of procedural complaints that its own conduct refutes and a legal theory of conflict that the Ninth Circuit has explicitly rejected.

For the foregoing reasons, the Pension Funds respectfully request that the Court appoint them Lead Plaintiff and approve their selection of Robbins Geller Rudman & Dowd LLP as Lead Counsel.

DATED:  January 20, 2026                                          Respectfully submitted,

ROBBINS GELLER RUDMAN
   & DOWD LLP


          s/Michael Albert
MICHAEL ALBERT
DANIELLE S. MYERS
MICHAEL ALBERT
KENNETH P. DOLITSKY
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
kdolitsky@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
swilliams@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead
Plaintiff

LOCAL 13 PENSION FUND, AND SHEET METAL WORKERS' LOCAL NO. 80 PENSION TRUST FUND'S REPLY BRIEF IN FURTHER SUPPORT OF LEAD PLAINTIFF MOTION - 5:25-cv-09410-EKL                                                                                                                - 7 -
4897-3132-2505.v1

ASHERKELLY
MICHAEL J. ASHER
JACQUELINE A. KELLY
25800 Northwestern Highway, Suite 1100
Southfield, MI  48075
Telephone:  248/746-2710
masher@asherkellylaw.com
jkelly@asherkellylaw.com

WATKINS, PAWLICK, CALATI
   & PRIFTI, PC
JOSEPH PAWLICK
EDMOND PRIFTI
1423 E. Twelve Mile Road
Madison Heights, MI  48071
Telephone:  248/658-0797
jpawlick@wpcplaw.com
eprifti@wpcplaw.com

Additional Counsel

LOCAL 13 PENSION FUND, AND SHEET METAL WORKERS' LOCAL NO. 80 PENSION TRUST
FUND'S REPLY BRIEF IN FURTHER SUPPORT OF LEAD PLAINTIFF MOTION - 5:25-cv-09410-
EKL                                                                                                                                                  - 8 -
4897-3132-2505.v1