United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HYUNGJOON KIM, et al.,<br>Plaintiffs,<br>v.<br>SYNOPSYS, INC., et al.,<br>Defendants. | **ORDER CONSOLIDATING CASES AND APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL**<br><br>Case No. 25-cv-09410-EKL |
| NEW ENGLAND TEAMSTERS PENSION FUND, et al.,<br>Plaintiffs,<br>v.<br>SYNOPSYS, INC., et al.,<br>Defendants. | Case No. 25-cv-10201-EKL |
| CITY OF STERLING HEIGHTS POLICE & FIRE RETIREMENT SYSTEM,<br>Plaintiff,<br>v.<br>SYNOPSYS, INC., et al.,<br>Defendants. | Case No. 25-cv-11059-EKL |

These putative class actions arise out of allegedly false and misleading statements in violation of the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act") made by Defendant Synopsys, Inc. ("Synopsys") and certain of its officers and directors. Before the Court are competing motions to consolidate the three cases and to appoint

United States District Court
Northern District of California

lead plaintiff and lead counsel. ECF Nos. 15, 19, 25, 29, 35, 42. The Court heard argument from movant Ohio Carpenters Pension Fund, UA Local 13 Pension Fund, and Sheet Metal Workers' Local No. 80 Pension Trust Fund ("Pension Funds"), movant City of Sterling Heights Police & Fire Retirement System ("Sterling Heights"), and movant Mehdi Vazeen.[1] For the reasons discussed below, the motions brought by Vazeen and the Pension Funds are GRANTED. Sterling Heights' motion is DENIED.[2]

## I. BACKGROUND

### A. Factual Background[3]

Synopsys offers electronic design automation software products that are used to design and test integrated circuits. Kim Compl. ¶ 2, No. 25-cv-09410-EKL, ECF No. 1. The company has two segments: Design Automation and Design IP. *Id.* "The Design IP segment provides pre-designed, silicon-proven components that semiconductor companies use to build chips and System-on-Chips . . . more quickly and cost-effectively." *Id.* The Design IP segment grew from 25% of Synopsys' revenue in fiscal year 2022 to 31% in fiscal year 2024. *Id.*

On January 16, 2024, Synopsys announced that it had entered into an approximately $35 billion agreement to acquire a second company, Ansys, Inc. ("Ansys"). New England Teamsters Pension Fund Compl. ¶ 5, No. 25-cv-10201-EKL, ECF No. 1 ("Teamsters Compl."). Synopsys filed a registration statement for the Ansys acquisition with the Securities and Exchange Commission ("SEC") that was declared effective on April 17, 2024. *Id.* ¶ 16; Sterling Heights Compl. ¶ 43, No. 25-cv-11059-EKL, ECF No. 1. On the same day, Synopsys filed a prospectus for the acquisition with the SEC. Teamsters Compl. ¶ 16. The registration statement and prospectus (collectively, the "Acquisition Materials") "incorporated by reference the risk factors identified in [Synopsys'] 2023 10-K" filing with the SEC. *Id.* ¶ 77. The Acquisition Materials

---

[1] All other movants withdrew their motions or filed notices of non-opposition prior to the hearing. *See* ECF Nos. 51, 52, 55.

[2] The motions that were withdrawn or abandoned by the other movants are also DENIED. ECF Nos. 25, 29, 35.

[3] All allegations are taken from the three related complaints and assumed true for purposes of resolving the pending motions.

United States District Court
Northern District of California

further stated that Ansys shareholders would receive $197 in cash and 0.345 shares of Synopsys' common stock in exchange for each share of Ansys stock. *Id.* ¶ 16. The valuation of Synopsys' shares was "based on Synopsys' closing stock price on December 21, 2023, the last full trading day prior to media speculation regarding a potential transaction." Sterling Heights Compl. ¶ 47(a). Ansys' shareholders voted to approve the acquisition on May 22, 2024. *Id.* ¶ 45.

Nearly a year later, on December 4, 2024, while the Ansys acquisition was pending, Synopsys issued a press release announcing the financial results of its fourth fiscal quarter and fiscal year ending October 31, 2024, and providing the company's fiscal year 2025 financial targets. Kim Compl. ¶ 17. The press release reported record revenue and expected growth. *Id.* Subsequently, on December 19, 2024, Synopsys filed its annual 10-K with the SEC reporting its financial results for the prior fiscal year. *Id.* ¶ 18. The 2024 10-K contained the following risk factors: (1) consolidation among customers and reliance on a relatively small number of large customers; (2) changes in demand due to customers reducing expenditures; (3) "not be[ing] successful in . . . AI initiatives"; (4) "[c]hanges in the mix of . . . products sold, as increased sales of . . . products with lower gross margins . . . may reduce . . . overall margins"; and (5) that if Synopsys "fail[ed] to optimize . . . EDA and IP solutions for use with major foundries' manufacturing processes or major IP providers' products, or if . . . access to such foundry processes or third-party IP products is hampered, then [Synopsys'] solutions may become less desirable to . . . customers." Teamsters Compl. ¶ 44 (emphasis omitted). These risk factors were "substantially the same as the risk factors" in the 2023 10-K that was incorporated in the Acquisition Materials. Teamsters Compl. ¶ 77; *see also* Sterling Heights Compl. ¶ 44.

Synopsys issued additional positive press releases and reports on February 26, 2025, and May 28, 2025. Kim Compl. ¶¶ 21-26. The acquisition subsequently closed on July 17, 2025, at which point former Ansys shareholders received Synopsys stock consistent with the terms set out in the Acquisition Materials. *Id.*

After market hours on September 9, 2025, Synopsys released its third quarter 2025 financial results, revealing that its "IP business underperformed expectations." Kim Compl. ¶ 28. Synopsys "reported quarterly revenue of $1.740 billion, missing its prior guidance of between

United States District Court
Northern District of California

$1.755 billion and $1.785 billion, and reported net income of $242.5 million, a 43% year-over-year decline from $425.9 million reported for third quarter 2024." *Id.* "Moreover, the Company reported its Design IP segment . . . came in at $426.6 million, a 7.7% decline year-over-year." *Id.* Synopsys also issued guidance for the fourth quarter and full year 2025, reflecting an expected revenue between $7.030 and $7.060 billion, which implied that Design IP revenue would decline by at least 5% on a full-year basis. *Id.* ¶ 30.

In response to the third quarter results, Synopsys' stock fell $216.59, or 35.8%, on September 10, 2025, to close at $387.78 per share. *Id.* ¶ 34. Three putative class action lawsuits followed.

**B. Procedural Background**

***The Kim Action:*** On October 31, 2025, Plaintiff Hyungjoon Kim brought claims against Synopsys for alleged violations of Sections 10(b) and 20(a) of the Exchange Act. Kim Compl. ¶¶ 53-67. Kim alleged that the statements made between December 4, 2024, and September 9, 2025, were materially false and/or misleading, and failed to disclose material adverse facts about Synopsys' business regarding:

> (1) the extent to which the Company's increased focus on artificial intelligence customers, which require additional customization, was deteriorating the economics of its Design IP business; (2) that, as a result, "certain road map and resource decisions" were unlikely to "yield their intended results;" (3) that the foregoing had a material negative impact on financial results; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

*Id.* ¶ 27. The *Kim* action sought to represent a putative class of "all persons and entities that purchased or otherwise acquired Synopsys securities between December 4, 2024 and September 9, 2025, inclusive, and who were damaged thereby." Kim Compl. ¶ 35.

On the same day the lawsuit was filed, notice of the action was published in *Business Wire*. Graham Decl., Ex. A at 3, ECF No. 43-1. The notice alerted members of the putative class of the pending action and instructed that any request to be appointed lead plaintiff must be filed by December 30, 2025. *Id.* The notice specified that the action applied "[i]f you purchased *or otherwise acquired* Synopsys securities during the Class Period." *Id.* (emphasis added).

***The Teamsters Action:*** On November 25, 2025, New England Teamsters Pension Fund ("Teamsters") filed a securities class action based on the same course of events. Teamsters Compl. ¶¶ 7, 41-55. In addition to the same Exchange Act claims as in the *Kim* action, Teamsters added claims under Sections 11, 12(a)(2), and 15 of the Securities Act on behalf of "all persons who purchased or otherwise acquired Synopsys common stock in exchange for their shares of Ansys common stock in the Acquisition." *Id.* ¶ 100(b). Teamsters also named several Synopsys executives and board members as Defendants. *Id.* ¶¶ 25-37. Like the *Kim* action, the *Teamsters* action alleged that the statements in Synopsys' 10-K filings were:

> [M]aterially false and misleading when made because Synopsys failed to disclose . . . [that]: (1) the Company's growing emphasis on artificial intelligence customers, who require more customization, was weakening the economics of its Design IP business; (2) as a result, certain of the Company's road map and resource choices were unlikely to achieve their intended outcomes; and (3) these issues were materially harming the Company's financial performance.

*Id.* ¶ 78. On the same day, Teamsters published notice in *Business Wire* informing putative class members of the pending action, its relation to the *Kim* action, and their right to move to be appointed lead plaintiff. Graham Decl., Ex. A at 9. The notice specified that putative class members could move to be appointed by December 30, 2025, the date established by the *Kim* notice. *Id.* at 9-10.

***The Sterling Heights Action:*** On December 30, 2025, Sterling Heights filed a third action against Synopsys and its executives and directors alleging the same Securities Act claims as in the *Teamsters* action. Sterling Heights Compl. ¶¶ 1, 54. Sterling Heights focused its allegations on Synopsys' allegedly faltering relationship with Intel, its largest foundry customer. *Id.* ¶¶ 34-41. Accordingly, Sterling Heights alleged that the Acquisition Materials were misleading "because Defendants failed to inform investors that its business was heavily dependent on Intel, which was experiencing problems." *Id.* ¶ 47. Like the prior actions, Sterling Heights also alleged that the Acquisition Materials included materially false information by incorporating the 2023 10-K risk factors, which indicated that certain risk factors may occur that had already occurred. *Id.* ¶ 49.

***Motions to Appoint Lead Plaintiff:*** Consistent with the deadline set by the *Kim* notice, six motions to consolidate the cases, appoint lead plaintiff, and appoint lead counsel were filed on

December 30, 2025. ECF No. 15 (“Vazeen Mot.”); ECF No. 19 (“Pension Funds Mot.”); ECF No. 42 (“Sterling Heights Mot.”); *see also* ECF Nos. 25, 29, 35. Three movants have since abandoned their motions in recognition that they do not have the largest financial interest in the litigation, leaving only the competing motions from Vazeen, the Pension Funds, and Sterling Heights. *See* ECF Nos. 51, 52, 55. The Court heard argument on the competing motions on April 29, 2026, and took the matter under submission. ECF No. 69.

## II. DISCUSSION

The Court begins by addressing whether to consolidate the three pending actions. Next, the Court addresses the competing motions to appoint lead plaintiff and selects co-lead plaintiffs to represent the putative class. Finally, the Court considers the co-lead plaintiffs’ selection of lead counsel.

### A. Consolidation

Under Federal Rule of Civil Procedure 42, the Court may consolidate actions that “involve a common question of law or fact.” Fed. R. Civ. P. 42(a). District courts are granted broad discretion in deciding whether to consolidate cases pending in the same district. *Invs. Rsch. Co. v. U.S. Dist. Ct.*, 877 F.2d 777, 777 (9th Cir. 1989).

Consolidation of the *Kim*, *Teamsters*, and *Sterling Heights* actions is appropriate because they involve common questions of law and fact. Specifically, the related actions allege substantially the same securities violations arising from purported misstatements in Synopsys’ 2023 and 2024 10-K risk factors. Vazeen and the Pension Funds have each moved for consolidation, and Sterling Heights does not oppose these motions. *See* Vazeen Mot. at 4-5; Pension Funds Mot. at 3-4; Sterling Heights Opp. at 3 n.1, ECF No. 53 (taking “no position on the consolidation of the related actions”); *see also* Hr’g Tr. 11:9-11 (same). Accordingly, the Court CONSOLIDATES the *Kim*, *Teamsters*, and *Sterling Heights* actions.

### B. Lead Plaintiff

Under the Private Securities Litigation Reform Act (“PSLRA”), district courts are directed to appoint as lead plaintiff “the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members,” also

referred to as the "most adequate plaintiff." 15 U.S.C. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i). The PSLRA establishes a three-step process for selecting the lead plaintiff. *See In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). At step one, the pendency of the first-filed action must be publicized in a "widely circulated national business-oriented publication or wire service" and the notice must advise that any putative class member may seek appointment as lead plaintiff. *Id.* (citation modified). At step two, the court identifies the presumptive lead plaintiff, which is "the movant with the largest financial interest who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) (citation modified). At this stage, only "a prima facie showing of adequacy and typicality" need be made and the determination should be based only on the movant's pleadings and declarations. *Id.* At step three, the court "give[s] other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *In re Cavanaugh*, 306 F.3d at 730. The presumption may be rebutted only upon proof by preponderance of the evidence that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *In re Mersho*, 6 F.4th at 899 (citation modified); *see also In re Crain Walnut Shelling*, 175 F.4th 1069, 1073 (9th Cir. 2026). "If the presumption is not rebutted, the presumptively most adequate plaintiff must be selected as lead plaintiff." *In re Mersho*, 6 F.4th at 899.

Here, Vazeen, the Pension Funds, and Sterling Heights each filed timely motions to be appointed lead plaintiff. Vazeen argues that he is the presumptive lead plaintiff and therefore should be appointed. *See* Vazeen Mot. at 6-10. The Pension Funds argue that they are the presumptive lead plaintiff and therefore should be appointed, or in the alternative, moves for appointment as co-lead plaintiff with Vazeen. *See* Pension Funds Mot. at 5-6; Pension Funds Opp. at 1, ECF No. 56. Sterling Heights moves for the Court to order that new notice be issued, limited to the Securities Act claims, with a new notice period for putative class members to move for appointment as lead plaintiff to follow. Sterling Heights Mot. at 1. In the alternative, Sterling Heights moves to be appointed lead plaintiff of a Securities Act subclass. *Id.* at 1, 5-7. The Court

United States District Court
Northern District of California

addresses these arguments in the order set forth by the PSLRA's three-step framework.

**1. Step One: Notice of the Action**

Kim timely published notice in *Business Wire* the same day he filed suit. Graham Decl., Ex. A at 2. It is undisputed that this notice was timely, its contents were sufficient as to the *Kim* action, and the chosen publication was adequate. However, Sterling Heights argues that the Court should order that new notice be issued, limited to the Securities Act claims, and that a new notice period should follow because the *Kim* notice pertained only to the Exchange Act claims. *See* Sterling Heights Mot. at 1, 5-7. The Court finds the *Kim* notice sufficient and that new notice is unnecessary.

New notice is not required under the PSLRA if a subsequent complaint asserts "substantially the same claim or claims" as the initial complaint for which notice was published. 15 U.S.C. §§ 77z-1(a)(3)(A)(ii), 78u-4(a)(3)(A)(ii). Republication of notice is therefore "typically disfavor[ed]." *In re Cloudera, Inc. Sec. Litig.*, No. 19-cv-03221-LHK, 2020 WL 1288362, *2 (N.D. Cal. Mar. 18, 2020) (citation omitted). Accordingly, courts do not require republication of notice unless "changes to a securities class action complaint 'make it likely that individuals who could now be considered potential lead plaintiffs would have disregarded the earlier notice.'" *Id.* (quoting *Kaplan v. S.A.C. Cap. Advisors, L.P.*, 947 F. Supp. 2d 366, 367 (S.D.N.Y. 2013)). This likelihood standard is met if, for example, the class definition is modified to expand membership in the putative class. *See id.* at *2-3. In comparison, the addition of Securities Act claims, by itself, is insufficient to warrant republication. *See id.* at *3 (noting that adding Securities Act claims, without expanding the class definition, "would not [require] republication"); *Thomas v. Magnachip Semiconductor Corp.*, No. 14-cv-01160-JST, 2015 WL 3749784, at *4 (N.D. Cal. June 15, 2015) (declining to order republication when Securities Act claims were added because the amended complaint "still center[ed] on the same factual scenario" and any new claims "relate[d] to the same misrepresentations"); *Zornberg v. NAPCO Sec. Techs., Inc.*, 778 F. Supp. 3d 516, 530 (E.D.N.Y. 2025) (same).

The *Teamsters* and *Sterling Heights* actions did not expand membership in the putative class. The proposed class in the *Kim* action includes anyone who "purchased or *otherwise*

*acquired*" Synopsys stock between December 4, 2024, and September 9, 2025. *Compare* Kim Compl. ¶ 35 (emphasis added), *with In re Cloudera*, 2020 WL 1288362, at *3 (holding that new notice was required when an amended complaint "add[ed] an entire group of putative class members" when the class definition was expanded from "all purchasers" to "all persons who purchased *and/or otherwise acquired*" defendant's stock). Former Ansys shareholders received Synopsys stock on July 17, 2025, and are therefore expressly included in the *Kim* class.[4] Thus, it is unlikely that former Ansys shareholders would have disregarded the *Kim* notice because those individuals were members of the putative *Kim* class, even though Securities Act claims were subsequently added. And the fact that both Sterling Heights and Dimitrios Tselepidakis each timely moved to be appointed lead plaintiff, despite having only acquired Synopsys stock through the Ansys acquisition, demonstrates that former Ansys shareholders did ***not*** disregard the *Kim* notice.[5] *See* Sterling Heights Mot. 2; Tselepidakis Mot. at 1, ECF No. 35.

Sterling Heights has not made any argument for why the *Kim* notice would "potentially exclude qualified movants from the lead plaintiff selection process." *Thomas*, 2015 WL 3749784, at 4 (citation omitted). Instead, Sterling Heights argues that republication is required because there is purportedly a fundamental conflict of interest between putative class members with Exchange Act and Securities Act claims. Sterling Heights Mot. at 5-7. As discussed below, the Court does not find that there is a conflict between class members. *See infra* Section II.B.3. Nor does Sterling Heights cite any authority requiring republication based on an alleged conflict of

---

[4] During oral argument, counsel for Sterling Heights addressed "whether the *Kim* class definition incorporates the Ansys merger acquirers" and "agree[d] . . . [that] it clearly does." Hr'g Tr. 14:16-19.

[5] Vazeen also argues that republication is not necessary because Teamsters published notice on November 25, 2025, which added the Securities Act claims. Vazeen Reply at 1, 4-5, ECF No. 58. However, that notice did not comply with the PSLRA, which requires that the published notice instruct putative class members "that, *not later than 60 days after the date on which the notice is published*, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. §§ 77z-1(a)(3)(A)(i)(II), 78u-4(a)(3)(A)(i)(II) (emphasis added). The *Teamsters* notice stated that putative class members must respond by December 30, 2025, the deadline first set by the *Kim* notice; thus, the *Teamsters* notice provided less than 60 days to respond. *See Lax v. First Merchs. Acceptance Corp.*, No. 97-C-2715, 1997 WL 461036, at *2 (N.D. Ill. Aug. 11, 1997) (explaining that a second notice that did not reset the 60-day response period did not comply with the PSLRA but finding the deficiency immaterial on other grounds).

interest.

The Court concludes that the PSLRA's notice requirement has been met. Accordingly, the Court DENIES Sterling Heights' motion insofar as it seeks an order for new notice. *See* Sterling Heights Mot. at 1, 5-7.

**2. Step Two: Presumptive Lead Plaintiff**

To identify the presumptive lead plaintiff, the Court must determine which movant has the largest financial interest in the action. The Court then determines whether that movant satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. For the reasons discussed below, the Court finds that Vazeen is presumptively the lead plaintiff.

**a. Largest Financial Interest**

To determine which movant has the largest financial interest, the court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d at 730. "[N]either the PSLRA nor the Ninth Circuit specifies precisely how to calculate which plaintiff has the largest financial interest." *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-cv-03451-LHK, 2011 WL 566814, at *3 (N.D. Cal. Feb. 15, 2011). Courts "may select accounting methods that are both rational and consistently applied" to "compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d at 730 & n.4.

"District courts within the Ninth Circuit generally consider the four '*Lax*' factors . . . to determine which plaintiff has the greatest financial interest." *Hoang v. ContextLogic, Inc.*, No. 21-cv-03930-BLF, 2022 WL 1539533, at *4 (N.D. Cal. May 16, 2022) (citing *Lax*, 1997 WL 461036, at *5). Those factors include: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *Id.* (citation omitted). Of these factors, courts typically "consider the fourth factor . . . as most determinative in identifying the plaintiff with the largest financial loss." *Id.* (citation omitted). However, the "relative weight will vary according to the circumstances of each case." *Ishak v. WM Tech., Inc.*, No. 24-cv-08959-ODW, 2025 WL 791270, at *4 (C.D. Cal. Mar. 11, 2025). The Court considers

United States District Court
Northern District of California

each factor with respect to the three competing movants.

**i. Number of Shares Purchased**

The first *Lax* factor requires the Court to consider the number of shares purchased or acquired during the class period. Vazeen purchased 6,003 shares; the Pension Funds purchased and acquired 5,327 shares; and Sterling Heights acquired 525 shares. *See* Vazeen Opp. at 1-2, ECF No. 54.[6] Thus, this factor favors Vazeen.

**ii. Number of Net Shares Purchased**

The second *Lax* factor requires the Court to consider the number of net shares purchased or acquired during the class period. Vazeen retained 6,003 shares; the Pension Funds retained 3,626 shares; and Sterling Heights retained 525 shares. *Id.* This factor therefore favors Vazeen.

**iii. Total Net Funds Expended**

The third *Lax* factor requires the Court to consider the total net funds expended during the class period. Vazeen expended $3,628,456.98; the Pension Funds expended $2,126,424.32; and Sterling Heights expended $309,230.25. *Id.* Thus, this factor favors Vazeen.

**iv. Approximate Loss**

The fourth *Lax* factor requires the Court to consider the approximate losses suffered by the movants during the class period. Courts use a variety of methods for calculating approximate loss, including the last-in-first-out ("LIFO") method and *Dura*-adjusted LIFO method. *See Schueneman v. Arena Pharms., Inc.*, No. 10-cv-1959-BTM, 2011 WL 3475380, at *3 (S.D. Cal. Aug. 8, 2011). "Under LIFO, stocks which were acquired most recently are assumed to be sold first" for loss calculation purposes. *Perlmutter*, 2011 WL 566814, at *10 (citation omitted). Under the *Dura*-adjusted LIFO method, losses are only considered with respect to shares retained at the time of a corrective disclosure. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005); *see also Mehedi v. View, Inc.*, No. 21-cv-06374-BLF, 2022 WL 377406, at *5 (N.D. Cal. Feb. 8, 2022).

---

[6] During oral argument, counsel for the Pension Funds and Sterling Heights confirmed that they do not dispute the chart in Vazeen's opposition brief summarizing each movant's claimed losses, except that the Pension Funds also claim Securities Act losses, as discussed below. Hr'g Tr. 10:17-23, 15:7-21.

Using both the LIFO and *Dura*-adjusted LIFO methods, Vazeen claims losses of $980,297.44. Vazeen Mot. at 6. In their motion, the Pension Funds claim $561,984.80 in losses. Pension Funds Mot. at 5 & Ex. C. However, in their opposition brief, the Pension Funds claim an additional $542,064 in Securities Act losses, resulting in an aggregated total loss of $1,104,048.80. Pension Funds Opp. at 1; Pension Funds Reply at 1, ECF No. 59. Sterling Heights argues that it has the largest unconflicted financial interest under the Securities Act, claiming $98,385 in losses. Graham Decl., Ex. B, ECF No. 43-2. Thus, either Vazeen ($980,297.44) or the Pension Funds ($561.984.80 or $1,104,048.80) have the largest loss, depending on whether it is appropriate to aggregate the Pension Funds' claimed losses under the Exchange Act and Securities Act.

On the facts of this case, the Court is not inclined to aggregate losses under the Exchange Act and Securities Act. As recognized by the Pension Funds during the hearing, there is inherently "some overlap in the losses recoverable under the two Acts," and the Pension Funds "did not provide the Court with specifics as to the extent of that overlap." *Hoang*, 2022 WL 1539533, at *7; *see also* Hr'g Tr. 21:24. Thus, the Court cannot determine the "approximate losses with precision." *Hoang*, 2022 WL 1539533, at *7. However, the extent of the overlap is likely significant and material because the shares acquired in the Ansys acquisition constitute the majority of the Pension Funds' total Synopsys portfolio and the Pension Funds' calculations supporting their claimed Exchange Act loss include those shares. *See* Pension Funds Mot., Ex. C (calculating Exchange Act loss based on 2,959.82 shares acquired through the acquisition and 2,367 shares acquired on the open market). It is also difficult to reconcile the Pension Funds' claim – first raised in their opposition – to have suffered greater losses than Vazeen with the fact that he owned more shares, retained more shares, and expended more money than the Pension Funds. *See Twitchell v. Enovix Corp.*, No. 23-cv-00071-SI, 2023 WL 3170044, at *9 (N.D. Cal. Apr. 28, 2023) ("[C]ourts in this district have looked with disapproval on movants who present different loss calculations in their subsequent briefing from what they presented in their motions.").

Additionally, comparing the Pension Funds' aggregate loss to Vazeen's Exchange Act loss creates an apples-to-oranges comparison. Unlike the Pension Funds, Vazeen's calculations are

certain because he claims only one type of loss. If the Pension Funds' aggregate loss ($1,104,048.80) was properly adjusted to account for the overlap between claims, it is likely that the adjusted loss would fall below Vazeen's Exchange Act loss ($980,297.44). Thus, unlike the cases cited by the Pension Funds where the aggregate loss was considered because each movant claimed both Exchange Act and Securities Act losses, here that comparison would not be appropriate. *See Hoang*, 2022 WL 1539533, at *7; *Duane & Virginia Lanier Trust v. Sandbridge Energy, Inc.*, No. CIV-15-634-M, 2016 WL 1056653, at *2 n.4 (W.D. Okla. Mar. 16, 2016). Accordingly, the Court cannot simply credit the Pension Funds' aggregate loss calculation.

Thus, the Court finds that the Pension Funds' claimed losses are, at most, roughly equal with Vazeen's losses, given that the Pension Funds' aggregate claimed losses are only 12.62% greater than Vazeen's claimed losses even without accounting for any overlap. *See Westchester Putnam Cntys. Heavy & Hwy. Laborers Loc. 60 Benefit Funds v. Brixmor Prop. Grp.*, No. 16-cv-02400 (AT) (SN), 2016 WL 11648466, at *1-2 (S.D.N.Y. Nov. 29, 2016) (finding that a 16% difference was roughly equal and not outcome determinative when the other *Lax* factors "provide[d] a more objective assessment of [the] movant's financial interest"). Accordingly, the Court finds that the fourth factor is neutral or weighs slightly in favor of Vazeen since the likelihood of overlap is substantial.

**v. Weighing the *Lax* Factors**

Weighing the four *Lax* factors, the Court finds that Vazeen has the greatest financial interest. "When faced with competing movants whose claimed losses are roughly equal, courts treat those losses as equivalent and look to the other three *Lax* factors to determine which movant has the largest financial interest." *Ishak*, 2025 WL 791270, at *4. Here, the first three factors strongly favor Vazeen and the Court finds that these "factors provide a more objective assessment of [the] movant[s'] financial interest [in this action] than the losses suffered" because of the unknown amount of overlap in the losses claimed by the Pension Funds. *Brixmor Prop. Grp.*, 2016 WL 11648466, at *2. Accordingly, the Court finds that Vazeen has the largest financial

interest in the relief sought by the class.[7]

**b. Rule 23(a) Requirements**

Because the Court finds that Vazeen has the largest financial interest in the litigation, the Court next considers whether he has made a prima facie showing that he satisfies the Rule 23(a) requirements of typicality and adequacy. *See In re Mersho*, 6 F.4th at 899; *see also Mehedi*, 2022 WL 377406, at *9 ("Examination of the remaining [Rule 23] requirements is deferred until the lead plaintiff moves for class certification."). The Court concludes that Vazeen has made the requisite showing.

**i. Typicality**

The presumptive lead plaintiff is typical if his claims "arise from the same event or course of conduct giving rise to the claims of other class members and [are] based on the same legal theory." *In re Surebeam Corp. Sec. Litig.*, No. 03-cv-1721-JM, 2004 WL 5159061, at *6 (S.D. Cal. Jan. 5, 2004) (citation modified). However, this requirement "does not mandate that all claims be identical." *Id.* Accordingly, "on a number of occasions, courts have found a class representative typical" when their claims arise only under the Exchange Act "even if the class representative is representing claims of both Securities Act and Exchange Act claimants." *Id.* For example, *In re Surebeam* found that the lead plaintiff was typical of the class because "[e]very proposed plaintiff allege[d] essentially the same misrepresentations in [the defendant's] financial statements" even though "differences exist[ed] in the times the different individuals purchased their shares." *Id.*

Vazeen has made a prima facie showing that his claims are typical of the putative class because all class members allege essentially the same misrepresentations in the risk factors in Synopsys' 10-K filings. *See* Kim Compl. ¶¶ 17-27; Teamsters Compl. ¶¶ 44, 77; Sterling Heights Compl. ¶ 49; *see also In re Surebeam*, 2004 WL 5159061, at *6; *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) ("Confronted with a class of purchasers allegedly defrauded over a period

---

[7] The Court reaches this conclusion in order to follow the sequential process laid out in the PSLRA. *See In re Cavanaugh*, 306 F.3d at 731. However, as discussed below, whether Vazeen or the Pension Funds have the greatest loss is ultimately immaterial. More consequential is the finding that Sterling Heights' financial interest is a distant third under the *Lax* factors.

of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable.")

**ii. Adequacy**

"Adequacy is determined by considering two factors: (1) whether the movant appears able to prosecute the action vigorously through qualified counsel; and (2) whether the movant has interests antagonistic to or in conflict with those of the class." *In re Peregrine Sys., Inc. Sec. Litig.*, No. 02-cv-870-J (RBB), 2002 WL 32769239, at *3 (S.D. Cal. Oct. 11, 2002). Vazeen has selected qualified counsel with experience litigating securities class actions. *See* Vazeen Mot. at 10. And Vazeen's pleadings and declaration do not indicate any interest antagonistic to the class, as he is alleged to have suffered nearly $1 million in losses and is therefore situated to vigorously litigate the case on behalf of the class. *See id.* at 9; *see also In re Mersho*, 6 F.4th at 899. Vazeen has therefore made a prima facie showing of adequacy.

**3. Step Three: Opportunity to Rebut**

Once the lead plaintiff presumption is triggered, it may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" is inadequate. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II), 78u-4(a)(3)(B)(iii)(II). Sterling Heights challenges Vazeen's status as the presumptive lead plaintiff on two bases. First, Sterling Heights argues that Vazeen cannot be the lead plaintiff because he lacks standing to pursue the Securities Act claims. *See* Sterling Heights Opp. at 3, 5-6. Second, Sterling Heights argues that there is an inherent conflict of interest between putative class members who purchased Synopsys shares on the open market ("Open Market Shareholders") and those who acquired shares in the Ansys acquisition ("Acquisition Shareholders"). *See id.* at 1, 4-7; Sterling Heights Mot. at 5-7. Sterling Heights points to the fact that the two groups' claims are "premised on different false statements, involve different classes and time periods, and require proof of distinct elements under separate statutory schemes." Sterling Heights Mot. at 6. Additionally, the Open Market Shareholders purportedly benefited when Synopsys acquired Ansys for less than it would have paid if its stock was properly valued. *Id.* at 7. The Court is unpersuaded by these arguments.

As an initial matter, the lead plaintiff is not required to have standing for every claim. "[B]ecause the PSLRA mandates that courts must choose a party who has . . . the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004); *see also Schueneman*, 2011 WL 3475380, at *5 (following *Hevesi*); *In re CTI Biopharma Corp. Sec. Litig.*, No. C16-216RSL, 2016 WL 7805876, at *3-4 (W.D. Wash. Sep. 2, 2016) (same). Instead, the lead plaintiff can rectify any standing issues by appointing class representatives with standing. *See Schueneman*, 2011 WL 3475380, at *5.

As for the alleged inherent conflict of interest, the Court finds that Sterling Heights has not carried its burden because the conflict is speculative and inapplicable to Vazeen. *See Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1151 (N.D. Cal. 1999) ("[S]peculation[] about possible conflicts do[es] not rebut the statutory presumption that one lead plaintiff can vigorously pursue *all* available causes of action against *all* possible defendants under *all* available legal theories."). Courts in this Circuit have found that the differences between the legal elements in Exchange Act and Securities Act claims "do not defeat the presumption that one lead plaintiff can vigorously pursue all available legal claims."[8] *In re Surebeam*, 2004 WL 5159061, at *10; *see also Aronson*, 79 F. Supp. 2d at 1151. And Sterling Heights' argument that the Exchange Act and Securities Act claims are "premised on different false statements[] [and] involve different classes and time periods" is insufficient because those facts only serve to show that certain class members are differently situated, not that their interests are in conflict with one another. Sterling Heights Mot. at 6. Instead, all putative class members share aligned interests in proving that the materially similar representations in Synopsys' 10-Ks were false or misleading, and that Synopsys' stock was

[8] Sterling Heights argues otherwise, citing *In re Peregrine Systems*. That case is distinguishable and supports the Court's reasoning. There, the court refused to appoint a presumptive lead plaintiff that had only acquired defendant's stock through an acquisition, rather than on the open market, because "[u]nlike a section 10(b) fraud claim [under the Exchange Act], no scienter is required for liability" under the Securities Act, and a plaintiff with only Securities Act claims would not be incentivized to prove the more demanding Exchange Act standard. *In re Peregrine Sys., Inc. Sec. Litig.*, 2002 WL 32769239, at *11. This reasoning is inapplicable here because Vazeen has every incentive to prove the more difficult elements of an Exchange Act claim because that is his only claim.

artificially inflated and tainted by fraud.

The only alleged conflict that Sterling Heights specifically identifies is that Open Market Shareholders will purportedly be incentivized to argue that Synopsys' stock was *not* artificially inflated when it acquired Ansys. *Id.* at 5-7. Sterling Heights' argument rests on the assertion that the Ansys acquisition "benefited the open market purchasers that held through the merger," which seems to suggest that Synopsys' stock price increased when the acquisition was finalized.[9] Hr'g Tr. 4:6-10. This argument is purely speculative because the at-issue statements occurred before the acquisition was finalized. *See* Kim Compl. ¶¶ 17-26; Teamsters Compl. ¶ 44. The Open Market Shareholders cannot argue both that the press releases and 2024 10-K published in December 2024 were fraudulent but also that Synopsys' stock price was not inflated in July 2025 when the acquisition was finalized. *See* Sterling Heights Compl. ¶ 45. Any such argument would necessarily jeopardize the Exchange Act claims, indicating that there is no conflict of interest between class members.[10]

---

[9] Notably, this conclusion is purely speculative because Sterling Heights has not furnished any evidence showing the history of Synopsys' stock valuation. Moreover, because the Ansys acquisition was announced nearly eleven months before the class period began, the acquisition may have affected Synopsys' stock price before any putative class member acquired Synopsys stock. *See* Teamsters Compl. ¶ 5; Sterling Heights Compl. ¶ 47(a) (stating that the Ansys acquisition price was "based on Synopsys' closing stock price on December 21, 2023, the last full trading day prior to media speculation regarding a potential transaction"); *see generally In re Crain Walnut Shelling*, 175 F.4th at 1073. Additionally, because Acquisition Shareholders received Synopsys stock in the merger, they would have received any benefit that accrued after the acquisition closed just like the Open Market Shareholders. Thus, it is not clear that the two groups are in fact differently situated.

[10] The cases Sterling Heights cites on this point are unpersuasive or distinguishable. In *Edwards v. McDermott International, Inc.*, the court found that a conflict existed between the presumptive lead plaintiff, who had only acquired defendant's stock through a merger, and the open market purchasers, because the presumptive lead plaintiff benefited when it exchanged the target company's shares, "which 'were allegedly significantly inflated,'" for the defendant's shares, "which were untainted by any such issues before the [m]erger." No. 18-cv-04330, 2024 WL 1769325, at *6 (S.D. Tex. Apr. 24, 2024). No such issue exists in this case because there are no claims stemming from the acquisition of Ansys, the target company, or any allegations that Ansys' stock was inflated. Meanwhile, *In re HealthSouth Corp. Securities Litigation* is unpersuasive because it resolved a motion for class certification meaning that, rather than being speculative, the court had the benefit of a developed factual record that it found showed an actual conflict. *See* 213 F.R.D. 447, 462 (N.D. Ala. Feb. 27, 2003). As *In re HealthSouth* demonstrates, if a conflict does arise later in this litigation, the Court can address it at that time.

Additionally, the Court finds no basis to conclude that Vazeen benefited from the Ansys acquisition or would be conflicted. Vazeen acquired Synopsys shares on September 5, 2025, and September 9, 2025, months after the acquisition was finalized. Vazeen Mot., Ex. B. Accordingly, Vazeen did not hold any Synopsys stock "through the merger," which is what Sterling Heights argues is the basis for finding that a conflict exists. *See* Hr'g Tr. 4:6-10. Instead, Vazeen bought Synopsys' stock when the market would have already priced in the value from the acquisition, meaning he would not have seen any acquisition-connected benefits.

Thus, the Court concludes that Sterling Heights has not met its burden of proof to show that Vazeen is an atypical or inadequate lead plaintiff. Accordingly, the Court GRANTS Vazeen's motion to be appointed lead plaintiff. *See* ECF No. 15.

**4. Appointing Co-Lead Plaintiffs**

Even though Vazeen satisfies the typicality and adequacy requirements of Rule 23(a), it is within the Court's discretion to appoint a co-lead plaintiff when "prudent" to ensure that all plaintiffs are adequately represented. *Sayce v. Forescout Techs., Inc.*, No. 20-cv-00076-SI, 2020 WL 6802469, at *6 (N.D. Cal. Nov. 19, 2020); *see also Miller v. Ventro Corp.*, No. 01-cv-1287, 2001 WL 34497752, at *10-11 (N.D. Cal. Nov. 28, 2001); 15 U.S.C. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i) (instructing the Court to "appoint as lead plaintiff the member *or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" (emphasis added)). Here, the Court finds that it is in the best interests of the putative class to have co-lead plaintiffs because Vazeen does not have Securities Act claims and given that he purchased Synopsys shares only near the very end of the class period. *See Wang v. Athira Pharma, Inc.*, No. C21-861-TSZ, 2021 WL 4726458, at *3 (W.D. Wash. Oct. 5, 2021) (appointing co-lead plaintiffs because the presumptive lead plaintiff only had Exchange Act claims and would be unable to pursue the Securities Act claims on behalf of the class if unable to prove scienter); *Sayce*, 2020 WL 6802469, at *6-8 (finding that "the class would be best represented by lead plaintiffs who also purchased securities during the earlier portion of the class period"). Additionally, Vazeen and the Pension Funds have indicated a willingness to act as co-lead plaintiffs. *See* Hr'g Tr. 24:15-22; Pension Funds Opp. at 1; *see also Twitchell*, 2023 WL

United States District Court
Northern District of California

3170044, at *8-9 (appointing co-lead plaintiffs when the plaintiffs were amenable to the arrangement and represented that they could work together efficiently).

The Pension Funds are next in line for consideration as lead plaintiff, as they have the next-largest financial interest in the litigation. The Pension Funds are typical because they "suffered the same injuries as absent class members," including both alleged Exchange Act and Securities Act violations, "as a result of the same conduct by the defendants." *In re Extreme Networks Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2016 WL 3519283, at *3 (N.D. Cal. June 28, 2016). The Pension Funds are adequate because they have selected competent counsel, and their pleadings and declaration do not indicate any interest antagonistic to the class.

Sterling Heights' only argument for why the Court should not appoint the Pension Funds is that, like Vazeen, they are inherently conflicted due to the competing incentives to prioritize either the Exchange Act or Securities Act claims. Sterling Heights Opp. at 5. But as explained above, the Court does not find that there is a conflict between putative class members. Additionally, Sterling Heights' novel argument that the Pension Funds are internally conflicted is unpersuasive because courts routinely appoint lead plaintiffs with both Exchange Act and Securities Act claims to represent both groups, *see, e.g.*, *Hoang*, 2022 WL 1539533, at *9; and, as a practical matter, a single lead plaintiff with both claims will face the same choices and tradeoffs in its effort to maximize its own recovery that two lead plaintiffs working together – one with each type of claim – would encounter.

Thus, the Court finds that the Pension Funds satisfy the requirements of Rule 23. Accordingly, the Court GRANTS the Pension Funds' motion and appoints them Co-Lead Plaintiff. *See* ECF No. 19.

**C. Lead Counsel**

Under the PSLRA, the lead plaintiff has the right, subject to court approval, to select and retain counsel to represent the class. *See Cohen v. U.S. Dist. Ct.*, 586 F.3d 703, 711 (9th Cir. 2009). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Id.* at 712. Courts routinely appoint co-lead counsel when the choice of counsel is reasonable, and the firms express a willingness to work together. *See Sayce*,

2020 WL 6802469, at *8; *Hoang*, 2022 WL 1539533, at *9.

Vazeen retained Levi & Korsinsky, LLP to act as lead counsel. Vazeen Mot. at 10. The Pension Funds retained Robbins Geller Rudman & Dowd LLP to act as lead counsel. Pension Funds Mot. at 7. Both firms have presented their credentials, including years of experience successfully litigating large securities class action suits such as this one. Vazeen Mot. at 10-11 & Ex. E; Pension Funds Mot. at 7-8. Accordingly, the Court approves Vazeen's selection of Levi & Korsinsky, LLP and the Pension Funds' selection of Robbins Geller Rudman & Dowd LLP and APPOINTS each firm as co-lead counsel.

## III. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Pursuant to Federal Rule of Civil Procedure 42(a), the above-captioned related actions are hereby consolidated for all purposes into one action.

2. Within fourteen days, the parties shall meet and confer and propose a schedule for the filing of a consolidated or amended complaint and Defendants' responsive pleading.

3. This order (the "Order") shall apply to the above-captioned action (the "Action") and to each case that relates to the same subject matter that is subsequently filed in or transferred to this Court and consolidated with the Action.

4. A Master File is established for this proceeding. The Master File shall be Civil Action No. 5:25-cv-09410-EKL. The Clerk shall file all pleadings in the Master File and note such filings on the Master Docket. Every pleading in the Action shall have the following caption: *In re Synopsys, Inc. Securities Litigation*, No. 5:25-cv-09410-EKL (N.D. Cal.). In light of this consolidation, the Clerk shall close the files in Case Nos. 5:25-cv-10201-EKL and 5:25-cv-11059-EKL.

5. Whenever a case that should be consolidated into this Action is filed in, or transferred to, this District, the parties to the Action shall file an administrative motion to consider whether that case should be related pursuant to Civil Local Rule 3-12.

6. All related actions that are subsequently filed in, or transferred to, this District shall be consolidated into this Action for pretrial purposes. A party in a related action that objects to

United States District Court
Northern District of California

such consolidation, or to any other provision of this Order, must file an application for relief from this Order within ten (10) days after the action is related. Nothing in the foregoing shall be construed as a waiver of Defendants' right to object to the consolidation of any subsequently-filed or transferred related action.

7. Vazeen and the Pension Funds are appointed to serve as Co-Lead Plaintiffs in the Action pursuant to 15 U.S.C. §§ 77z-1(a)(3)(B), 78u-4(a)(3)(B). *See* ECF Nos. 15, 19.

8. Vazeen's selection of Levi & Korsinsky, LLP and the Pension Funds' selection of Robbins Geller Rudman & Dowd LLP as Co-Lead Counsel for the putative class is approved pursuant to 15 U.S.C. §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v). Co-Lead Counsel shall have the authority to speak for all Plaintiffs and putative class members in all matters regarding the litigation, including, but not limited to, pretrial proceedings, motion practice, trial, and settlement. Co-Lead Counsel shall make all work assignments in such a manner as to facilitate the orderly and efficient prosecution of this litigation, and to avoid duplicative or unproductive effort. Additionally, Co-Lead Counsel shall have the following responsibilities:

a. to brief and argue motions;

b. to initiate and conduct discovery, including, but not limited to, coordination of discovery with Defendants' counsel, and the preparation of written interrogatories, requests for admissions, and requests for production of documents;

c. to direct and coordinate the examination of witnesses in depositions;

d. to act as spokesperson at pretrial conferences;

e. to call and chair meetings of Plaintiffs' counsel as appropriate or necessary from time to time;

f. to initiate and conduct any settlement negotiations with Defendants' counsel;

g. to provide general coordination of the activities of Plaintiffs' counsel and to delegate work responsibilities to selected counsel as may be required, in such a manner as to lead to the orderly and efficient prosecution of this litigation and to avoid duplication or unproductive effort;

h. to consult with and employ experts;

i. to receive and review periodic time reports of all attorneys on behalf of Plaintiffs, to determine if the time is being spent appropriately and for the benefit of Plaintiffs, and to determine and distribute Plaintiffs' attorneys' fees; and

j. to perform such other duties as may be expressly authorized by further order of this Court.

9. The remaining motions for appointment of lead plaintiff and lead counsel are DENIED. ECF Nos. 25, 29, 35, 42.

**IT IS SO ORDERED.**

Dated: July 21, 2026

Eumi K. Lee
United States District Judge

United States District Court
Northern District of California